UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED

OCT 2 0 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-630-GWU

GARRY L. BEGLEY
(Deceased) By and through his children and
next of kin,
Gary Begley
Donna Begley,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Begley v. Apfel, London Civil Action No. 97-

590 (E.D. Ky.) to obtain judicial review of the administrative denial of his application

for Disability Insurance Benefits (DIB). After a period of administrative

reconsideration prompted by the undersigned's Memorandum Opinion, Order, and

Judgment, the case is again before the Court on cross-motions for summary

judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence. Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

1

Begley

Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human

2

Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-

3

Begley

making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely

using the term "framework" in the text of the decision is insufficient, if a fair reading

of the record reveals that the agency relied entirely on the grid. Ibid. In such cases,

the agency may be required to consult a vocational specialist. Damron v. Secretary,

778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert

testimony only if the hypothetical question given to the expert accurately portrays

the plaintiff's physical and mental impairments. Varley v. Secretary of Health and

Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Garry L. Begley (the plaintiff) filed his current application for DIB on July 20,

1995 (Tr. 50-3), which was denied in a decision by an Administrative Law Judge on

November 12, 1996 (Tr. 16-28) and remanded by this Court, as noted in the

Introduction.[1]  The period at issue in this appeal runs from the plaintiff's alleged

onset date of May 15, 1993 to November 12, 1996 and from October 16, 1998 to

March 31, 1999, his Date Last Insured (DLI).

---

[1]A second DIB application filed November 12, 1997 was also litigated, with the
Court awarding benefits for a closed period from November 13, 1996 to October 15,
1998 in a decision of June 29, 2005. Begley v. Barnhart, London Civil Action No. 04-346
(E.D. Ky.). Begley passed away on August 31, 2000, with the causes of death listed as
cardiac arrest and brain hemorrhage due to hypertension. (Tr. 235). According to the
plaintiff's brief, the ALJ's denial decision languished at the Appeals Council from 1999 to
2005, when an inquiry initiated by Begley's children as to the status of the claim finally
prompted a finding that the Appeals Council could find no basis for review. (Tr. 229).

4

        The reason for the prior remand was that the plaintiff's treating physician, Dr.
Roy Varghese, had imposed physical limitations on the plaintiff on March 8, 1996,
indicating that he would "never" be able to climb, balance, stoop, kneel, crawl, push,
pull, or work around heights or moving machinery. (Tr. 185-8). The reasons given
were severe contact dermatitis and fracture of the humerus, although some of the
plaintiff's other conditions such as hypertension and peptic ulcer disease were also
mentioned. (Id.). Dr. Varghese had made no indications that the restrictions would
be temporary. This opinion had been given seven months after the plaintiff
fractured his humerus on August 8, 1995. The ALJ in the prior decision had found
that the fractured humerus and associated problems had not been present for 12
months continuously, and did not meet the requirement of a "severe" impairment.
(Tr. 25). The Court noted that the administrative decision had not been issued until
November, 1996, well over one year after the accident, and remanded the case for
further inquiry from Dr. Varghese or testimony from a medical expert (ME).

        On remand, the defendant evidently made no additional inquiry of Dr.
Varghese and did not obtain testimony from a ME. The ALJ found that, for the
period at issue, the plaintiff had had severe impairments of hypertension,
gastroesophageal reflux disease, a duodenal ulcer, a ventral hernia, and anxiety
disorder, borderline intellectual functioning, status post left humerus fracture with
resulting arm pain, weakness, and left shoulder pain, chronic contact dermatitis, and
chronic obstructive pulmonary disease. (Tr. 243). Presented with the hypothetical

                                              5

Begley

question concerning an individual of the plaintiff's age, education, and work experience with these restrictions, the VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 339-40).

While the terms of the Court remand were not followed, the defendant argues that evidence from Dr. Varghese's hospitalizations of the plaintiff in 1998 and 1999, in the ALJ's words, show that the plaintiff "had a variety of medical problems, but that his hypertension responded to treatment administered during a short hospital stay; that he had no significant residual effects related to the shoulder injury; that he had mild chronic obstructive pulmonary disease; and that despite his hospital visits, he was maintained on a fairly conservative treatment regimen following his discharge from the hospital."  (Tr. 245).

The only evidence directly concerning the residual from the plaintiff's fractured left humerus subsequent to Dr. Varghese's March 8, 1996 restrictions was an x-ray taken for Dr. Varghese on November 18, 1997.  It indicates that the fracture had healed, the shaft of the humerus was unremarkable and there was no evidence of destructive process or dislocation.  (Tr. 286).

The plaintiff testified at the April 26, 1999 administrative hearing that he could barely raise his left arm and had been told he had a rotator cuff tear, but surgery for this problem and for his ventral hernia could not be performed because his blood pressure was not adequately controlled.  (Tr. 315, 320, 323).  An October, 1995

6

examination by an orthopedic surgeon, Dr. Mark Einbecker, confirms a "marked"
decreased range of motion of the left shoulder due to a possible rotator cuff tear
and a "frozen shoulder." (Tr. 180). Remarkably, in view of the testimony, the
orthopedic evidence, and the Court's remand order, no evaluation of the current
status of the problem was obtained from either Dr. Varghese, a consultative
examiner, or a medical reviewer. The issue of the functional status of the plaintiff's
left arm, the main cause for the prior remand, was left essentially unresolved except
for a lay interpretation of one x-ray.

Although this failure to follow the Court's remand order by itself is troubling,
the transcript contains numerous references that the plaintiff was disabled due to
other conditions during the periods at issue.

Dr. Salim Bakali, who had treated Begley on several occasions, opined on
August 9, 1993 that he would be disabled for an indefinite period due to headaches,
skin lesions, and high blood pressure. (Tr. 106). This opinion was reiterated on
October 18, 1993. (Tr. 107). Dr. C. A. Moore indicated that Begley should be off
work for the period of August 6, 1993 to April 26, 1994 due to chronic chemical
dermatitis of his hands. (Tr. 109-11). Dr. Mitchell Wicker conducted a
consultative evaluation on April 27, 1994 and concluded that, while he believed that
Begley could perform another line of work that did not involve topical irritants as far
as the contact dermatitis was concerned, he could not be cleared for any work until
his hypertension was controlled. (Tr. 114). Numerous physicians visits and hospital

7

Begley

admissions between 1994 and March, 1999 showed that Begley's blood pressure was <u>not</u> controlled, despite his being compliant with medications. (Tr. 144, 146-7,150-1, 155, 158, 160-1, 163-4, 169, 173, 208). Begley was hospitalized no less than five times between October 1998 and March 1999 for uncontrolled hypertension. (Tr. 276-7, 281-3, 288, 292-3, 298, 302-3). The VE testified that "somebody who's in the hospital every month except for . . . one out of . . . six months" could not be competitively employed on a full-time basis. (Tr. 340-1).

In view of the failure of the administration to properly address the issue as provided in the Court's prior memorandum opinion, and the other evidence of disability throughout the period at issue, a Judgment and Order will issue awarding benefits to the plaintiff for the period of May 15, 1993 to November 12, 1996 and from October 16, 1998 to March 31, 1999.

This the _____20_____ day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE

8